**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3648
_____

MICHAEL J. DANIELS,
                                        Appellant

v.

LAURIE E. CYNKIN; ANDREW M. ROSENBERG;
SUSAN J. SNYDER LIVING TRUST; ESTATE OF SUSAN J. SNYDER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-13-cv-06027)
District Judge:  Honorable Jerome B. Simandle
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 16, 2014

Before: AMBRO, VANASKIE and SLOVITER, <u>Circuit</u> <u>Judges</u>

(Filed: January 22, 2015)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Michael J. Daniels, a retired attorney proceeding pro se, appeals from the order of the United States District Court for the District of New Jersey dismissing his complaint that arose from divorce proceedings in Florida state court. For the reasons that follow, we will affirm the District Court's order.

I.

In 2002, Daniels and Susan J. Snyder signed a prenuptial agreement and then married. Daniels received Social Security benefits due to the marriage, which were in addition to his own Social Security benefits. In 2009, Snyder left Daniels and filed for divorce in Florida state court, alleging that the marriage was irretrievably broken. In August 2010, a Florida trial court issued a divorce decree that upheld the prenuptial agreement, dissolved the marriage, and held that Daniels was not entitled to alimony or attorneys' fees. Daniels filed an appeal in Florida state court challenging the lack of a money award, but that appeal was unsuccessful.

In July 2011, Snyder passed away. After her death, Daniels learned that he had been disinherited from her will, which he believed was a violation of the prenuptial agreement.[1] He moved to set aside the divorce decree, but the trial court denied that request and his appeal was unsuccessful.[2]

---

[1] Daniels alleges that Snyder induced him to sign the prenuptial agreement by promising to "provide for [him] as she had provided for [her second husband], as long as we were married." (Compl. 5.)
[2] Daniels later filed additional challenges in Florida state court but those, too, were

Thereafter, in October 2013, Daniels filed a pro se complaint in the District Court, raising a host of allegations relating to the divorce proceedings. The complaint, brought against Snyder's two adult children (her heirs), her estate, and the Susan J. Snyder Living Trust ("Appellees"), sought (1) a declaration that the prenuptial agreement was null and void, (2) modification, vacatur, or reversal of the divorce decree, (3) reinstatement of the Social Security benefits that had ceased due to the divorce, and (4) attorneys' fees from the Florida state court proceedings.

Appellees moved to dismiss the complaint. On July 23, 2014, the District Court granted that motion, concluding that it "lack[ed] subject matter jurisdiction over this case pursuant to the Rooker-Feldman doctrine, the domestic relations exception,[3] and federal law regarding finality for Social Security appeals." (J.A. at 24.) This appeal followed.[4]

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's dismissal of Daniels's complaint for lack of subject matter jurisdiction, see Freidrich v. Davis, 767 F.3d 374, 377 (3d Cir.

---

unsuccessful.

[3] "The Supreme Court has long recognized a domestic relations exception to federal diversity jurisdiction." Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir. 2008) (citing Ankenbrandt v. Richards, 504 U.S. 689, 693-94 (1992)). This exception encompasses "cases involving the issuance of a divorce, alimony, or child custody decree." Ankenbrandt, 504 U.S. at 704.

[4] Because Daniels concedes that the District Court lacked jurisdiction over his request to reinstate the Social Security benefits that ceased after the divorce, (see Daniels's Opening Br. 10), we do not discuss that issue further here.

3

2014). We may affirm the court's decision on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

The Rooker-Feldman doctrine bars a federal court from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Four requirements must be met for the doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (quoting Exxon Mobil Corp., 544 U.S. at 284). Much of Daniels's complaint attacked the Florida trial court's handling of his divorce proceedings and sought to disturb the trial court's rulings in that case. For substantially the reasons provided by the District Court, we agree with the District Court that these claims are barred by the Rooker-Feldman doctrine.

Daniels's complaint also alleged that Snyder breached the prenuptial agreement, and that she and her attorney, Leanna Freeman, misled and lied to the Florida trial court during the divorce proceedings. Additionally, Daniels claimed that Snyder's children conspired with Freeman "to keep the truth from being told . . . and to keep all of the benefits that they have received." (Compl. 15.) These claims are not barred by the

4

Rooker-Feldman doctrine.  See Great W. Mining & Mineral Co., 615 F.3d at 167 (explaining that, when "a federal plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction"); see also id. at 168 ("Even though the injuries of which the plaintiff complained helped to cause the adverse state judgments, these claims were independent because they stemmed from some other source of injury, such as a third party's actions.") (internal quotation marks omitted).  Furthermore, to the extent that these claims alleged constitutional violations pursuant to 42 U.S.C. §§ 1983 and 1985, they are not barred by the "domestic relations exception."[5]  See McLaughlin v. Pernsley, 876 F.2d 308, 312-13 (3d Cir. 1989).  Nevertheless, as explained below, these claims were properly dismissed.

To obtain relief under § 1983, a plaintiff must show, inter alia, that the defendant(s) acted under color of state law.  See 42 U.S.C. § 1983; Great W. Mining & Mineral Co., 615 F.3d at 175-76.  Here, however, all of the actors — Snyder, her children, and Freeman (who is not even named as a defendant in this lawsuit) — were

---

[5] To the extent that these claims were brought under state law and pursuant to the District Court's federal diversity jurisdiction, see 28 U.S.C. § 1332, we agree with the District Court that they are barred by the domestic relations exception because Daniels has asserted them as a means to modify, vacate, or reverse the divorce decree, see Matusow, 545 F.3d at 244-45.  To the extent that Daniels argues that the District Court's supplemental jurisdiction under 28 U.S.C. § 1367 was a basis to exercise jurisdiction over these claims, we disagree because all of his constitutional claims were subject to dismissal.  See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") (quotation marks omitted).

private parties. "Although a private party can be liable under § 1983 if he or she willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right," Max v. Republican Comm. of Lancaster Cnty., 587 F.3d 198, 203 (3d Cir. 2009), those circumstances are not present here.[6] Accordingly, Daniels's § 1983 claims were subject to dismissal for failure to state a claim upon which relief can be granted.

Any claims brought by Daniels under § 1985 were also subject to dismissal. That statute contains three subparts. Section 1985(1) is clearly inapplicable here, as that provision "prohibits two or more persons from interfering with a federal officer's performance of his duties." Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 423 n.1 (3d Cir. 2003) (internal quotation marks omitted). Sections 1985(2) and (3) do not apply here either because, inter alia, Daniels has not alleged that Snyder and the others "colluded with the requisite racial[] or . . . otherwise class-based, invidiously discriminatory animus." Davis v. Twp. of Hillside, 190 F.3d 167, 171 (3d Cir. 1999) (internal quotation marks omitted) (discussing § 1985(2)); see Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006) (discussing § 1985(3)).

---

[6] Daniels alleged that Snyder and Freeman "acted under the color of law made possible by status of the [Florida trial court] judge." (Compl. 7.) This allegation is insufficient to trigger § 1983 because there is no indication that the judge participated in the alleged conspiracy. Cf. Great W. Mining & Mineral Co., 615 F.3d at 176. Indeed, Daniels's allegations that Snyder and Freeman misled and lied to the judge make clear that the judge was *not* part of the alleged conspiracy.

In light of the above, the District Court did not err in dismissing Daniels's complaint.[7] We will affirm that judgment.

---

[7] There was no need for the District Court to grant Daniels leave to amend his complaint because any amendment would be futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).